UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) |
| v. | )<br>) Docket no. 2:11-cr-190-GZS |
| MICHAEL LEWIS, | )<br>)<br>) |
| Defendant. | )<br>) |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant's Motion to Dismiss for Speedy Trial Violations (Docket # 24). The Court held a hearing on the Motion on January 25, 2012. Prior to the hearing, the parties filed a stipulation of facts (Docket # 32). Based on the Court's review of the written and oral submissions, the Court now DENIES the Motion for reasons briefly explained herein.

**I.  FACTUAL FINDINGS & PROCEDURAL HISTORY**

According to this Court's docket, on August 26, 2011, the Government charged Defendant Michael Lewis with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Based on the Government's Complaint (Docket # 1 in D. Me. 2:11-mj-140-JHR), the Magistrate Judge signed an arrest warrant that same day. The docket then laid dormant for thirty-seven days until October 3, 2011. On October 3rd, the United States Marshal Service notified the Clerk's Office that it had arrested Michael Lewis. Lewis was then provided an initial appearance on that same day. Prior to his appearance, the Government filed a motion to pretrial detention (Docket # 5). Lewis was temporarily detained until October 6th, at which time he waived his right to a detention hearing and consented to detention. (See Order of

Detention (Docket # 6).) On October 26, 2011, the Grand Jury indicted Lewis on the 18 U.S.C. § 922(g)(1) violation.

As alleged in the Complaint and the Indictment, Lewis, a convicted felon, was found to be in the possession of a firearm on April 6, 2011. As a result, state authorities had arrested him that same day and he was taken to Cumberland County Jail. On August 8, 2011, Lewis was charged with the following: Possession of a Firearm by a Felon, in violation of 15 M.R.S.A. § 393(1)(A-1); Theft by Receiving Stolen Property, in violation of 17-A M.R.S.A. § 359(1)(B)(2); and Carrying a Concealed Weapon, in violation of 25 M.R.S.A. § 2001-A(1)(B). Although bail was set in state court, Defendant never posted bail and remained in state custody at the Cumberland County Jail.

On Monday, August 29, 2011 Assistant District Attorney Will Barry dismissed all state charges against Lewis. His dismissal was prompted by a communication from Assistant United States Attorney Darcie McElwee on Friday, August 26, 2011, in which she advised Barry that a federal complaint had been filed against Lewis and in which Barry apparently indicated he would "promptly dismiss the related state charges." (See Docket # 32-1 at Page ID 74.) AUSA McElwee similarly notified Attorney Donald Carter, who was representing Lewis on the state charges, about the filing of federal charges. Also, on August 29, 2011 at 9:34 a.m., a federal detainer was lodged against Lewis at the Cumberland County Jail.

Nearly a month later, on Monday, September 26, 2011, the United States Attorney's Office received a telephone call from Defendant's girlfriend, who stated that although the his state charges had been dismissed, Lewis was still at the Cumberland County Jail. This information was passed along to AUSA McElwee the same day. AUSA McElwee then telephoned the jail and was told by jail officials that the Defendant was still being held on state

charges, not the federal detainer.[1] Later on September 26, 2011, AUSA McElwee exchanged a number of emails with ADA Barry. In an email sent at 4:08 p.m. on September 26, 2011, ADA Barry confirmed that he dismissed the state charges on August 29, 2011. (See Docket # 32-1 at Page ID 69.) In a follow-up email sent on Tuesday, September 27, 2011 at 8:22 a.m., ADA Barry indicated he would check with the state court to see if the dismissal was received and have the court notify the jail. (See id. at Page ID 70.)

Later in the afternoon on September 27, 2011, AUSA McElwee received an email from Attorney Randall Bates. In an email sent at 3:58 p.m. that day, Attorney Bates indicated to AUSA McElwee that he has confirmed with the clerk at state court that the state case was dismissed on August 29, 2011. (See id. at Page ID 71.) In response, AUSA McElwee indicated that Lewis would "get[] credit for all the time." (Id.)

On Monday, October 3, 2011, ADA Barry informed AUSA McElwee by email that he had called the state court earlier in the day to ask that the dismissal of the state charges be faxed to the Cumberland County Jail. He reported that he had confirmed with Sgt. Lawrence LaPointe at the jail that the dismissal was received on October 3, 2011. Apparently, the activities of October 3, 2011 prompted the Cumberland County Jail to follow its customary practice of notifying the United States Marshal Service when it receives notice that an individual's state charges have been dismissed but there remains a federal detainer. Following its standard and customary practice, the United States Marshals Service then notified the U.S. Attorney's Office as well as the Clerk's Office of this Court.

---

[1] Notably, in a separate string of emails between Thursday, September 29, 2011 and Friday, September 30, 2011, Cumberland County District Attorney Stephanie Anderson, who had also been contacted about concerns with Lewis' ongoing detention, indicated that she called the jail some time on September 29, 2011 and was informed by the jail "that the only thing holding [Lewis] was the federal detainer." (Id. at Page ID 76.)

3

In connection with the pending Motion, the Government and Defendant have further stipulated that: there is no evidence that prior to September 26, 2011, the Cumberland County Jail notified the United States Marshals Service of the state's dismissal; and, there is no evidence that prior to September 26, 2011, the United States Marshals Service notified the United States Attorney's Office that the Defendant's state charges had been dismissed.

## II. DISCUSSION

Defendant alleges that the Government has violated his rights to a speedy trial. Defendant invokes the Speedy Trial Act, the Fifth Amendment, and Federal Rule of Criminal Procedure 48(b) in support of his Motion to Dismiss.

### A. The Speedy Trial Act ("STA")

As relevant to the pending Motion, the Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charge." 18 U.S.C. § 3161(b). It is undisputed in this case that Defendant was indicted on October 26, 2011. Given a straight 30-day limit, the Court would need to find that Lewis was arrested or served with a summons in connection with the firearms charge prior to September 26, 2011. However, the STA further allows that days be excluded—i.e., not counted towards the 30-day limit—when a pretrial motion is pending. See 18 U.S.C. § 3161(h)(1)(D). In this case, the Motion for Detention was pending from October 3, 2011 through October 6, 2011, resulting in an exclusion of four days. The end result is that the Government complied with the STA 30-day limit so long as Defendant was arrested on or after September 22, 2011.[2]

---

[2] The Court notes that a separate provision of the STA calls for a prisoner to be "promptly advise[d] . . . of the charge and of the prisoner's right to demand a trial" whenever a federal detainer is filed. 18 U.S.C. § 3161(j)(1)(2).

4

As the record makes clear, Lewis was arrested by federal authorities on October 3, 2011 and, thus, the record simply does not support a claim that the 30-day limit of Section 3161(b) was violated. See United States v. Kelly, 661 F.3d 682, 687 (1st Cir. 2011) (finding that a writ of habeas corpus as prosequendum does not trigger the 30-day STA clock); see also United States v. Copley, 774 F.2d 728, 730 (6th Cir. 1985) (finding that a federal detainer did not serve as an arrest for purpose of the STA).[3]

Defendant urges this Court to look beyond the actual federal arrest by arguing that the STA can be triggered by "any restraint resulting from federal action." (Def. Reply (Docket # 27) at 1 (quoting United States v. Woolfolk, 399 F.3d 590, 596 (4th Cir. 2005))). Thus, Defendant asserts that the lodging of the federal detainer, which occurred here on August 29, 2011, can start the STA 30-day clock. Assuming for purposes of argument that the First Circuit would endorse the Fourth Circuit's view, Woolfolk requires that the Court pinpoint the date on which "the Government knew or should have known that the defendant was restrained solely to answer federal charges." Woolfolk, 399 F.3d at 596. On the record before the Court, the evidence only supports a finding that the Government knew or should have known that Lewis was restrained solely on his federal detainer as of September 26, 2011.[4] Even this earlier date falls within STA's 30-day window.

---

The record is devoid of any evidence as to if and when this notice was given to Lewis. In any event, "dismissal of the charges against a defendant is not an appropriate remedy" the failure to comply with § 3161(j). United States v. King, 909 F. Supp. 369, 376 (E.D. Va. 1995). Nonetheless, it would appear that if the required § 3161(j) notice had been given, Lewis should not have needed to resort to having his speedy trial rights secured by his girlfriend.

[3] Although the First Circuit indicated in Kelly that similarity between the state charges and the federal charges might require a different analysis, see Kelly, 661 F.3d at 689 & n. 6, the Court views the Kelly decision as sufficiently analogous to this case to treat Kelly as binding precedent.

[4] The Court notes that on remand the district court on Woolfolk similarly found no violation of the STA, concluding that Woolfolk had remained in state custody after his charges were dismissed "because either the jail or the court made a clerical error in processing the termination of Woolfolk's state charges, not because of the federal detainer." Woolfolk, 2005 WL 2100933, at *3 (W.D.Va. 2005). The record in this case supports a similar conclusion.

Even if the Court were to find a violation of Section 3161(b), the Court then would consider a number of factors, including "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1). Depending on the Court's assessment of these factors, the STA requires the Court to determine whether a dismissal should be without prejudice or with prejudice thereby barring reprosecution. See id. In this case, the Court is satisfied that these factors would weigh in favor of a dismissal without prejudice. Even assuming that the rather minimal delay at issue here is solely "attributable to the sovereign" (rather than the defendant), the seriousness of the crime, the lack of any demonstrated prejudice to Defendant, and the lack of an apparent adverse effect on the administration of the STA or the administration of justice would weigh in favor of a dismissal without prejudice. United States v. Hastings, 847 F.2d 920, 924-930 (1st Cir. 1988); see also United States v. Jones, 601 F.3d 1247, 1257-58 (11th Cir. 2010) (dismissing firearms charges without prejudice following an STA violation).

## B. Fifth Amendment[5]

As the First Circuit has explained,

> [T]he Due Process Clause of the Fifth Amendment 'has a limited role to play in protecting against oppressive [pre-indictment] delay.' United States v. Lovasco, 431 U.S. 783, 789 (1977) (summarizing United States v. Marion, 404 U.S. 307, 324 (1971)). The Due Process Clause has only a limited role in this context because the statutes of limitations provide the primary protection against undue pre-indictment delays. To rise to the level of a due process violation despite the applicable statute of limitations not having run, the delay (1) must have 'caused substantial prejudice to [defendant's] rights to a fair trial' and (2) 'was an intentional device" used by the prosecution "to gain tactical advantage over the accused.' Marion, 404 U.S. at 324. 'Substantial prejudice' means more than inconvenience; it requires a showing of actual prejudice, and even the

---

[5] Although Defendant's Motion invoked the Sixth Amendment, it is clear that pre-indictment delay is properly analyzed under the Fifth Amendment. See United States v. Dowdell, 595 F.3d 50, 55 n.2 (1st Cir. 2010); United States v. Marler, 756 F.2d 206, 209-212 (1st Cir. 1985).

unavailability of witnesses or evidence might not be sufficient to meet this burden.

United States v. DeCologero, 530 F.3d 36, 78 (1st Cir. 2008) (internal citations omitted). The record presented does not suggest that the delay between August 29, 2011 and October 3, 2011 caused substantial prejudice to Defendant's right to a fair trial. Likewise, there is no suggestion of any intentional effort by the Government to gain a tactical advantage. Rather, at most, the record reflects miscommunication and a reliance on customary practices that were not followed. The Court finds no Fifth Amendment violation.

### C. Federal Rule of Criminal Procedure 48(b)

Under Rule 48 of the Federal Rules of Criminal Procedure, the Court has supervisory authority to "dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." Fed. R. Crim. P. 48(b). However, courts have repeatedly held that Rule 48 applies only to post-arrest delay. See, e.g., United State v. McCoy, 977 F.2d 706, 712 & n. 6 (1st Cir. 1992) (citing United States v. Marion, 404 U.S. 307, 319 (1971)). Thus, Rule 48 does not serve as a procedural vehicle for the relief sought by Defendant in the Motion to Dismiss.

## III. CONCLUSION

For the reasons just given, the Court hereby DENIES Defendant's Motion to Dismiss.

SO ORDERED.

                                        /s/ George Z. Singal
                                        United States District Judge

Dated this 25th day of January, 2012.